No. 9898.

MARY P. DAWSON ET AL. VS. SPENCER R. THORPE.—THOMAS HICKMAN ET AL., WARRANTORS.

The eviction of a purchaser under a voidable tax sale, who, at the time of the purchase, held a mortgage on the property, renews the mortgage and relieves it from all effects of the extinguishment resulting from the mortgage creditor's having acquired the ownership of the thing mortgaged.

But this renewal is ineffective if the creditor has, in the meantime, permitted the principal debt to secure which the mortgage was given, to become prescribed.

The purchase by the mortgage creditor, while extinguishing the mortgage, did not destroy the debt or affect the creditor's right and power to enforce payment of it and to prevent its prescription. Having suffered the debt to become extinguished, his mortgage is necessarily destroyed, and he has no more right to enforce it when the debt has been extinguished by prescription than if it had been extinguished by payment.

APPEAL from the Eleventh District Court, Parish of Natchitoches. *Pierson*, J.

*Scarborough & Carver* and *White & Saunders* for Plaintiffs and Appellants.

*Jack & Dismukes* and *K. A. Cross* for Defendant and Appellee.

*C. Chaplin* for the Warrantors.

The opinion of the Court was delivered by

Fenner, J.  Under the view we take of the law applicable thereto, we are relieved from the necessity of stating all the facts and issues involved in this complicated case, and confine ourselves to the following facts which are undisputed:

1st.  On October 13, 1866, Mrs. Blanchard executed a conventional mortgage upon the property now in controversy in favor of Mrs. Clark for a debt of $8031 with interest, then acknowledged to be due but rendered exigible only on October 15, 1867.

2d.  On May 31, 1872, Mrs. Clark sold to Dr. Thomas H. Patterson her above-mentioned debt and mortgage.

3d.  On July 6, 1872, Dr. Thos. H. Patterson bought, at a tax sale, the property on which his mortgage rested and entered into possession thereof as owner.

4th.  In 1878, the heirs of Mrs. Blanchard brought a suit against the heirs of Dr. Patterson, who had succeeded him in the title and possession of the property, to annul the tax sale under which he held and to recover the property.

5th.  The abovementioned litigation resulted in a final decree rendered by this Court in November, 1883, (35 Ann. 1086) by the effect of which the tax title was annulled, and the heirs of Mrs. Blanchard recovered the property subject, however, to the condition of reimbursing to defendants the sum of $9894.88 with interest from date of judgment in district court, being excess of reimbursement allowed defendants for taxes and improvements over the rents and revenues.

6th.  On the 18th of October, 1883, the heirs of Blanchard sold the property to the defendant, S. R. Thorpe, for the price of $21,000 and out of the cash payment the amount of the judgment in favor of Patterson's heirs, exceeding $10,000, was paid to and accepted by them.

7th.  On the day preceding the final consummation of this sale, viz: On October 17, 1883, the heirs of Patterson had caused to be reinscribed against the property the old Clark mortgage of 1866, heretofore mentioned, which had been first inscribed in 1867, and had never before been reinscribed.

In September, 1885, the present suit was brought, which is an hypothecary action instituted by the heirs of Patterson against defendant, as third possessor, to enforce the aforesaid conventional mortgage.

Numerous defenses are set up, among which the one which was sustained by the judge *a quo* was the prescription of ten years, pleaded in extinguishment of the principal obligation secured by the mortgage.

There is no dispute that the debt became due in 1867, and that nearly eighteen years had expired before any demand of payment was made, or any step taken of any kind to interrupt prescription.

The only reliance of plaintiffs to defeat this plea of prescription rests on the application of the principle announced in Art. 3409 of the Civil Code: "The servitudes and incorporeal rights which the third possessor held on the property before his possession of it, are renewed after his relinquishment, or after the sale under execution made upon him. His own creditors, after those who held their titles under the preceding proprietors, exercise their rights of mortgage in their order on the property relinquished or sold at auction."

In a learned and equitable opinion, this Court has extended this principle so as to cover the case of an evicted purchaser. N. O. Ins. Assn. vs. Labranche, 31 Ann. 839; Spencer vs. Goodman, 33 Ann. 398.

But, what is the principle? Under the language of the Code, the revival only extends to "the servitudes and incorporeal rights which the third possessor held on the property;" and the application of it in the Labranche case is correctly announced in the syllabus, as follows: "Pre-emption of a mortgage cannot take place pending the possession of the mortgaged property by the mortgage creditor, who holds under a voidable tax sale; and should such sale be annulled, the mortgage will revive with the rank which it held at the date of the sale."

And what are the reasons on which the principle rests? They are well expressed in the Labranche case, as follows: "The principle that no one can mortgage unto himself his own property is axiomatic, *res sua nemini servit*; and to say that one must reinscribe against himself would be compelling the doing of that which the law says cannot be done."

The Civil Code prescribes several methods by which mortgages are extinguished, amongst which one is: "by the creditor acquiring the ownership of the thing mortgaged;" and another is, "by the extinction of the debt for which the mortgage was given."

It is obvious that the principle under discussion applies exclusively to the first method of extinction, and relieves from its consequences

alone. In other words, the law declares that, by the effect of the mortgagee's acquisition of the property, the mortgage was extinguished; that, therefore, while holding the title, it was an impossible and vain thing for him to reinscribe a mortgage against his own property; and hence, that when the former owner and mortgage debtor annuls and destroys his title, justice requires that the supposed extinguishment of the mortgage by the title should cease with the destruction of the title, and the effects of such extinguishment in the failure to reinscribe should also cease.

The principle, in this point of view, is supported by the three equitable maxims, *"lex neminem cogit ad impossibilia aut vana," "contra non valentem, etc.,"* and the *" restitutio ad integrum."*

But it is perfectly clear that the acquisition of the property by Patterson under the tax sale had not the slightest effect upon the *debt* due by Mrs. Blanchard to him. Had the price paid by him for the property gone to the satisfaction of that debt, to that extent the principle of *restitutio ad integrum* would have received its effect in the requirement that the heirs of Mrs. Blanchard would have had to repay the same as a condition precedent to the recovery of the property.

But there was no such application of the price. The debt due to Patterson was entirely unaffected by the sale. Nothing prevented his suing the heirs of Blanchard and recovering judgment against them, and from satisfying the same out of any property liable therefor. That debt might have been paid, remitted, novated or extinguished by any of the modes of extinguishing obligations, and amongst others it was subjected to extinguishment by prescription.

It has been so extinguished, and, under the express language of paragraph 4, art. 3411 C. C., this extinguished the mortgage.

The revival of the mortgage under art. 3409 is no more effectual when the debt secured by the mortgage has been prescribed, than it would be if the debt had been paid. The one mode of extinction of the debt is just as effectual as the other.

This extinction of the debt destroyed the mortgage not only under the terms of Art. 3411 already referred to, but under the emphatic language of Art. 3285, which declares:

" Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it. Hence it happens that, in all cases, where the principal debt is extinguished, the mortgage disappears with it."

How are we to disregard these mandatory provisions of the law?

Counsel for plaintiffs contend that the decision in City Bank vs. Houston, 2 Ann. 114, establishes an exception to the above rules of the Code and shows that a mortgage may exist without any principal debt to support it.

Our study of that decision leads us to the conclusion that the court held that the debt was not extinguished, and that the bankrupt court had no power to extinguish it, in so far as it was secured by the mortgage. The court likened the prohibition in the Bankrupt act against destroying mortgages, etc., to the provision exempting fiduciary debts from the operation of the act; and held that the mortgage debt, to the extent of the security, was similarly exempt from the operation of the act.

But were this otherwise, that case would be clearly distinguishable from the instant one on other principles.

It is further claimed that the rule *contra non valentem* should defeat the prescription in this case, because if Patterson had sought to interrupt prescription by suit, he would have been compelled to pretermit his mortgage claim, and would thereby have abandoned and destroyed it. We cannot assent to the proposition.

It may be true, as a general rule, that by suing and obtaining a judgment for a debt, without asserting the mortgage by which it is secured, the creditor might be presumed to have abandoned the latter; but this presumption would by no means apply in a case when, at the time of the suit, the creditor held ownership of the mortgaged property. If the debt had been kept alive, the revival of the mortgage on eviction would have attached to the debt in whatever shape it might exist, under the very principles of the Labranche case.

We have reflected on this case in every light and can find no ground on which plaintiff's mortgage can escape the extinguishment resulting from the extinction of the principal debt.

If the renewal of their mortgage free from the effects of the extinguishment resulting from the mortgagee's ownership, when the latter is destroyed, becomes ineffective, it results from their failure to keep their debt alive, which the ownership of Patterson did not prevent them from doing, and from the effect of which the eviction cannot be. lieve them.

Judgment affirmed.

Watkins, J. recused himself.