ST. PAUL, J.
 

 This case is stated and disposed of by the district judge as follows:
 

 I.
 

 Opinion of the District Judge.
 

 By Cline, J. This is a suit originally filed by Mrs. Vivian Ventrilla against the defendants, to set aside a pretended act of sale from Tortorice to Sam Cancilla, under the alternative allegation that it was a fraudulent simulation or [in any event] that it constituted a fraudulent preference of Cancilla over the plaintiff. Tortorice subsequently having been adjudicated a bankrupt, his trustee intervened in the suit, joining the plaintiff in his allegations and prayer. The facts established by the record are as follows:
 

 As the result of a suit in this court on December 10, 1921, judgment was rendered on May 22, 1922, against Tortorice, and in favor of Mrs. Ventrilla in the sum of $2,566, based on personal injuries suffered by Mrs. Ventrilla in an altercation with Tortorice or members of his family. On December 13, 1921, Tortorice executed an act of sale to CanciHa, his brother-in-law, purporting to convey all of his real property, and possibly his shoeshop and merchandise, for the stated consideration of $6,000.
 

 Tortorice testifies that this consideration was composed of two notes aggregating $3,500, which he owed Cancilla for money borrowed to pay for his property,' and of a mortgage assumed by Cancilla amounting in principal, interest, and attorney’s fees to $1,700, together with $600 paid to him in cash. These items make a total of $5,800. He was unable to account for the balance of $200. On the day of the transfer at De Ridder, Cancilla gave him a check for $6,000, but later in New Iberia, where Cancilla resides, this was substituted for the two notes aggregating $3,500 and a check for $600, cashed at a New Iberia bank. Tortorice says the $6,000 check was given as security that the real consideration would be delivered subsequently. He was examined by his creditors in his bankruptcy proceedings on September 11, 1922, and testified that the $600 check was drawn at the office of Attorney O’Neal in De Ridder, and that the two notes -which he originally gave Cancilla were drawn in the offices of Attorney O’Neal and of Attorney Stewart, at De Ridder. Both these attorneys deny any knowledge of this having been done.
 

 Testifying on cross-examination, Tortorice says:
 

 “Q. You transferred that property after you were sued by Mrs. Ventrilla?
 

 “A. Yes; I don’t deny that.
 

 “Q. Why did you sell it to Sam Cancilla, and didn’t give anybody else anything?
 

 “A. Because he was first.
 

 
 *519
 
 “Q. Did you want to- make Mm first?
 

 “A. I notified my brother-in-law, and told him to come up. I wanted to keep any old crook from getting a hold. I think that the man that loaned me the money was first.”
 

 Cancilla testifies that he knew of the suit of Mrs. Ventrilla having been filed, and knew that Tortorice was selling him all of his property, and that he took the deed in order to save Ms money.
 

 Tortorice still occupies one property as a residence and shoeshop, and collects rent from the remaining property. He says that he pays rent to Cancilla, and collects rents as his agent. The receipts which he delivers to tenants bear the [printed] words, “House Rent Receipt. Sam Cancilla, Proprietor.”
 

 Before a creditor can set aside a sale by Ms debtors, he must establish three things: That the sale was fraudulent; that the transferee had knowledge of the fraud; and that the transfer injures the creditor. An act designed to.place his property beyond the reach "of his creditors, or some of them, is an act in fraud of the rights of those creditors; and if such act includes all, or so much, of the property that the remainder is not sufficient to satisfy the creditors, injury has occurred. If the transferee has knowledge of creditors other than himself holding claims against the transferor, and accepts a transfer of all the debtor’s property, either as a pure simulation or in consideration of claims held by Mmself, he accepts with knowledge of the fraud against the rights of other creditors. Especially is such knowledge established by the further fact that the transferee is a near' relative intimately acquainted with all the business affairs of the transferor.
 

 All these essential elements for recovery [on the revocatory demand] have been established by the plaintiff and intervener in this case, whether the two notes aggregating $3,500 [do, or do not] represent an actual indebtedness existing before and at the time of the transfer. And independently of this question, the transaction must be set aside as one in fraud of the plaintiff, a creditor of the defendant. The prayer for the annulment of the transfer as a pure simulation will be rejected by way of nonsuit, leaving the question of the indebtedness claimed by Cancilla for future determination.
 

 II.
 

 From this judgment both defendants (Tortorice and Cancilla) have appealed
 
 devohttively,
 
 and they assign as reasons for reversal of the judgment below the following:
 

 (1) That she (Mrs. Ventrilla) was not a
 
 creditor
 
 within the meaning of article 1970 of the Revised Civil Code of 1870 at the time the sale (by Tortorice to Cancilla) was made [which article gives to
 
 every creditor
 
 “an action to annul any contract made in fraud of their rights”].
 

 (2) That plaintiff has not shown that the sale was a
 
 simulation,
 
 but that the evidence showed that the sale was a
 
 hona fide
 
 transaction.
 

 (3) That plaintiff has not shown that Tortorice was
 
 insolvent
 
 at the time the sale was made, or that there were any other creditors than were paid by the sale.
 

 (4) That plaintiff has not shown that Cancilla, the. purchaser of said property, kpew of any fraud being perpetrated upon any person by said sale.
 

 (5) That there was no intention to defraud on the part of ^Tortorice, but simply an honest endeavor on his part to pay his creditors.
 

 (6) That the Bulk Sale Law of Louisiana (Act 114 of 1912, p. 135) has no application to sales of this nature [to wit, a sale of
 
 real estate,
 
 which is all that is involved in this case].
 

 III.
 

 For convenience we take up these assignments of error in reverse order thus:
 

 (6) Of course the Bulk Sales Law (Act 114 of 1912, p. 135) has no application to the case at bar. That act by its very terms applies only to bulk sales of “stocks of goods, wares and merchandise” out of the usual course of business, and not to sales of real estate; but the trial judge did not base his decision on that statute,
 
 nor do we.
 

 (5) and (4). The district judge did not pass upon, and we ourselves (for reasons hereinafter appearing) will not pass upon, the question “whether the two notes aggregating $3,500 do, or do not, represent an actual indebtedness (to Cancilla) existing be
 
 *521
 
 fore and at the time of the transfer”; but, on the contrary, he assumed and we assume,
 
 for the purpose of this case,
 
 that they did represent an actual indebtedness.
 

 Hence the only
 
 fraud,
 
 which he passed upon, and we pass upon, is the
 
 constructive
 
 fraud, or
 
 legal
 
 fraud, by which Cancilla was given a preference over other creditors (if any), to wit, the
 
 fraud
 
 defined by R. C. C. art. 3360, meaning:
 

 “Any unfair preference which the debtor may give to one of his creditors over the others, by selling or mortgaging to him a portion of his property for a debt existing before the contract.”
 

 And the extract from the testimony of Tortorice, given in the opinion of the district judge, establishes (what is otherwise self-evident) that Tortorice intended to, and
 
 did
 
 prefer his brother-in-law over his other creditors, because “I wanted to keep
 
 any old crook
 
 from getting a hold. I think that the man that loaned me the money was
 
 first.”
 

 But the district judge erred when he said
 
 broadly
 
 that, in order to set aside a sale whereby one creditor is given a preference over other, it must be established “that the transferee had knowledge of the fraud.” For the law, in every case, forbids the insolvent debtor “to give in payment to one creditor, to the prejudice of the others,
 
 any other thing than the sum of money due”
 
 (R. C. C. art. 2658), save and except that a husband may make a
 
 dation in payment
 
 of property to his wife in replacement of her dotal and paraphernal effects and money received by him (R. C. C. art. 2446), which is an
 
 exceptional
 
 right (Pelletier v. State Nat. Bank, 41 So. 640, 117 La. 335, and authorities there cited). For
 
 knowledge
 
 of the (legal) fraud, on the part of the person with whom the insolvent dealt, has no other bearing on the matter than to determine whether such person shall merely lose the advantage thus given him and the parties be placed in the same situation in which they were before the contract, or shaU also lose so much of the consideration given the insolvent as did not inure to the benefit of the creditors. R. O. 0. arts. 1982, 1983.
 

 (3) Plaintiff has shown that she has a judgment against Tortorice for $2,566 “with legal interest thereon from judicial demand (December 10, 1921),” and not only have defendants not shown that Tortorice has other property than that herein involved, but, on the contrary, the evidence shows very conclusively either that he has none or else that it is so effectively e'overed up that it cannot be reached. That suffices. R. O. C. art. 1985; In re Morgan & Co., 99 So. 696, 703, 155 La. 915, 937.
 

 (2) We have already said that,
 
 for the purpose of this case,
 
 we assume that the sale was
 
 bona fide,
 
 in the sense that it was meant to repay a
 
 bona fide
 
 debtor, and merely gave him an unlawful preference over other creditors.
 

 (1) The question whether or not the provisions of R. C. C. art. 1970, giving every
 
 creditor
 
 an action to annul any contract made in fraud of his rights, applies to one whose claim arises ex delicto and is
 
 unliquidated,
 
 appears never to have been passed upon by this court; but the statute makes no distinction between creditors whose claims are liquidated and those whose claims are still unliquidated, and “Ubi lex pon distinguit, nec nos distinguere debemus.”
 

 Defendants have furnished us authorities from other jurisdictions showing that in those jurisdictions some such distinction has been made for certain purposes, holding in effect that a claim arising from a tort is not a debt, and the claimant not a
 
 creditor
 
 until his claim is reduced to judgment. But whatever might have been said of such a proposition in this jurisdiction as the law formerly stood, the law as it
 
 now
 
 stands fur-
 
 *523
 
 rushes its own interpretation. R. C. 0. art. 1938, provides that—
 

 “All
 
 debts
 
 shall bear interest at the rate of five per cent, per annum from
 
 the time they become due,
 
 unless otherwise stipulated.”
 

 And Act 206 of 1916, p. 459, provides that—
 

 “Legal interest [meaning the interest fixed by R. 0. 0. art. 1938] shall, hereafter, attach
 
 from date of judicial demand,
 
 on all judgments, sounding in damages, ex delicto.”
 

 But our Code (article 1935) defines interest as “the damages due for
 
 delay
 
 in the performance of
 
 an obligation to pay money.”
 
 It follows, therefore, that the
 
 legal interest
 
 which attaches to a judgment for damages ex delicto “from date of judicial demand” is due for
 
 delay
 
 in the performance of an
 
 obligation to pay money;
 
 in other words, for delay in paying a moneyed debt. And, since all debts bear interest only from the time
 
 they become due,
 
 it follows further that the law considers that a claim for damages is a
 
 debt
 
 which becomes
 
 due
 
 from judicial demand. Here judicial demand was made on Tortorice on December 10, 1921, and the sale to Cancilla
 
 took
 
 place three days later, to wit, on December 12,1921.
 

 We are not to be understood, however, as holding that a party having an unliquidated claim for damages would have no right to annul a- contract made to his prejudice between the happening of the tort and the date of judicial demand. As to that, we express no opinion whatever at this time, it being sufficient in this ease to hold that he has such right as to contracts made after judicial demand; and the other question will be met only when it comes up before us.
 

 But in this case the plaintiff (Mrs. Yentrilla) has been joined by the trustee in bankruptcy, asking that the sale be set aside for the benefit of the creditors at large of the bankrupt (Tortorice). And the law in terms gives a right of action to “the representative of all the creditors” where there has been a cession of property under the insolvent laws “or other proceedings by which they are collectively represented.” We might therefore have rested the case
 
 there,
 
 but for the fact that there is no showing made in this record as to
 
 what
 
 creditors the bankrupt had other than Mrs. Ventrilla, or
 
 when
 
 their claims arose, or
 
 how
 
 they were injured by this sale; and hence, so far as this record shows, it may be that this action is being prosecuted practically for her exclusive benefit, and therefore should be decided according to the measure of
 
 her
 
 rights only. We have therefore preferred considering the case as if she were the sole plaintiff herein; and, since she is not complaining of the judgment in so far as
 
 it seems
 
 to annul the sale for the benefit of
 
 all
 
 the creditors, we will affirm it as it is written.
 

 IY.
 

 Plaintiffs early answered the appeal, praying that the judgment of the lower court be amended as
 
 to
 
 decree that the sale attacked be declared a
 
 pure simulation.
 
 But lately, in their written submission of the case to this court, the appellees (declaring that “the appeal herein taken being merely
 
 devolutive,
 
 the trustee proceeded to administer the property herein involved, and to distribute the proceeds thereof among the creditors”) prayed “that the judgment of the lower court be affirmed.” This is an abandonment of the prayer of their earlier answer, and hence leaves nothing for our further consideration.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.