595 So.2d 363 (1992)
CENTRAL BANK, Plaintiff-Appellee,
v.
E.A. SIMMONS, Defendant-Appellant.
FIRST AMERICAN BANK, Plaintiff-Appellee,
v.
Eugene Austin SIMMONS, et al., Defendant-Appellant.
Nos. 23,177-CA, 23,178-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
Rehearing Denied April 2, 1992.
*364 E.A. Simmons, In pro. per.
Snellings, Breard, Trascher, Inabnett & Sartor by E. Frank Snellings and Charles C. Trascher, Monroe, for Cent. Bank.
Boles, Boles & Ryan by L. Scott Patton, Monroe, for First American Bank & Trust of Louisiana.
Hudson, Potts & Bernstein by James A. Rountree and Jay P. Adams, Monroe, for Premier Bank.
Before LINDSAY, VICTORY and STEWART, JJ.
VICTORY, Judge.
This appeal arises from two consolidated lawsuits in which summary judgments were granted in favor of the plaintiff/banks on revocatory actions, the balance due one bank on two promissory notes, and rejecting defendants' reconventional demand for damages. We affirm.

FACTS
Appellants, Eugene Austin Simmons and his wife, Harriet Tubbs Simmons (Simmons)[1], were owners of several businesses in Monroe, Louisiana. Over the years, they amassed a large amount of property, as well as sizable debts. During the time period in question, some of the Simmons' creditors included Central Bank (Central), Premier Bank (Premier, formerly Ouachita National Bank), First American Bank & Trust (FABT), and Peoples Homestead. At least as early as 1988, the Simmons were having cash flow problems and consequently were having difficulty paying obligations as they became due.
On October 6, 1988, Central sued Simmons to collect on two promissory notes with the principal amounts due of $49,884.02 and $3,389.78. Simmons answered regarding the larger note with affirmative defenses of error and misrepresentation, alleging that a prior oral agreement with Phillip Montgomery, a bank officer, modified the written note, and reconvened against Central and Montgomery for damages.
On November 3, 1988, Premier Bank sued Simmons and obtained a money judgment in the amount of $49,680.75 on October 23, 1989.
FABT sued Simmons on February 27, 1989, and obtained a $190,850.32 judgment on September 20, 1989. On April 25, 1989, FABT filed a second lawsuit against Simmons, and was awarded a $55,134.29 judgment on October 31, 1989.
Meanwhile, on March 28, 1989, the Simmons established two trusts, the "Chosen-One" and the "Chosen", naming one or both of them as income beneficiary for life, then to Mr. Simmons' children for 20 years. The Simmons were named trustees and the *365 Christian Broadcasting Network was the charitable remainder beneficiary.
On April 14, 1989, Mr. Simmons donated his undivided one-half interest in the family home to his wife, and recorded the donation on April 17, 1989. However, because the act was not dated, it was executed a second time and recorded again on April 18, 1989. On that same day, Mrs. Simmons executed and recorded a collateral mortgage note for $175,000.00 on the residence. The collateral mortgage note is held by her mother in Missouri, who admittedly gave no consideration for the note.
On April 18, 1989, Simmons executed two warranty deeds conveying an undivided one-half interest in seven tracts of immovable property to each of the above named trusts.
On May 5, 1989, Security Financial, Inc., a corporation wholly owned by Simmons, executed a collateral mortgage and note in the amount of $200,000 encumbering another piece of real property.
As a result of the above transactions, on July 26, 1989, Central filed a supplemental petition to its suit on the promissory notes, seeking revocation of the donation to Mrs. Simmons, the deeds to the trusts, and the acts of collateral mortgage.
FABT also filed a petition to revoke the same acts. Premier Bank and Central intervened in FABT's suit, and both lawsuits were consolidated. The banks later moved for summary judgment.
The banks submitted a substantial number of affidavits, depositions, and records in support of their motions for summary judgment; in opposition, Simmons submitted only a short affidavit regarding the Central note. The trial judge granted the motions for summary judgment, revoking the aforementioned donations, deeds, and mortgages, awarding Central judgment for the balances due on the unpaid notes, and rejecting Simmons' reconventional demand for damages against Central and Montgomery.

DISCUSSION
The function and objective of summary judgment is to avoid the delay and expense of trial on the merits when there exists no genuine issues of material fact. It enables the court to expedite the disposition of cases. Howard v. General Motors Acceptance Corp., 324 So.2d 834 (La.App. 2d Cir.1975).
Mere formal allegations without substance will not preclude summary judgment. If a mover at trial on a motion for summary judgment produces convincing proof, by affidavits or other evidence, of facts upon which the motion is based, and no counter-affidavit or other evidence is offered by the opposing party to contradict that proof, then a conclusion may be justified that there is no genuine issue as to the facts, even though allegations to the contrary might be contained in the pleadings. LSA-C.C.P. Arts. 966, 967; Hardee v. Kilpatrick Life Ins. Co., 373 So.2d 982 (La. App. 3d Cir.1979).

REVOCATORY ACTION
Prior to the revisions of the Civil Code in 1984 relating to revocatory actions, the creditor had to prove: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditors; and (4) pre-existing and accrued indebtedness. National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2d Cir.1967).
The new Code Articles (LSA-C.C. Arts. 2036, et seq.) on the revocatory or Paulian action, provide that an obligee has a right to annul an act of the obligor made or effected after the rights of the obligee arose that causes or increases the obligor's insolvency. LSA-C.C. Art. 2036. Insolvency is met when an obligor's total liabilities exceeds the total of his fairly appraised assets. LSA-C.C. Art. 2037. It is no longer necessary that fraud be shown in order to succeed in this action. Under the new articles, only anteriority of the debt and insolvency of the debtor are prerequisites to revoking the acts. LSA-C.C. Art. 2036, comments (a) and (f).
Once a creditor alleging insolvency of its debtor shows the amount of his debts, it is then incumbent upon the debtor to show that he has retained assets of an equal or greater value. Morgan v. Gates, *366 396 So.2d 1386 (La.App. 2d Cir.1981); Holland v. Gross, 195 So. 828 (La.App. 2d Cir.1940).
The banks deposed Mr. Simmons on three occasions and propounded several sets of interrogatories. In his responses to interrogatories, Mr. Simmons admitted his debts owed to creditors at the time of the acts to be $501,400 as follows:

 Commercial National Mortgage $ 1,000.00
 Central 53,000.00
 Premier 50,000.00
 FABT 240,000.00
 Peoples Homestead 145,000.00
 7 Credit/Debit cards 12,400.00
 ____________
 TOTAL $501,400.00

The banks provided additional proof that his debts were underestimated by the following:

 Weingarten Realty $ 32,285.00
 Small Business Administration 320,000.00
 Peoples Homestead, underestimation of 75,000.00
 ___________
 TOTAL $427,285.00

Thus, the banks have established Simmons' total debts to be at least $928,685 after the 1989 deeds, donations, and mortgages were executed. Simmons, who made no evidentiary offering in opposition to the motions for summary judgment on the revocatory actions, failed to show any issues of material fact as to his debts.
Thus, it was incumbent upon Simmons to come forth with evidence at least establishing an issue of fact that his remaining assets exceeded his liabilities. According to claims made in depositions and answers to interrogatories, Simmons' remaining assets could not exceed $662,500. (The banks argue that these values are grossly inflated and the assets are actually only worth about $150,000.)
We agree with the trial court that no genuine issue of material fact is presented. Assuming, arguendo, that Simmons' valuations for his remaining assets are accurate, the transactions sought to be revoked, caused or increased his insolvency.
Thus, the banks, having shown there is no genuine issue of material fact that their debts existed prior to the deeds, donations, and mortgages and that they rendered him insolvent or increased his insolvency, are properly entitled to revoke the acts. Therefore, we conclude the trial judge correctly granted summary judgment in the banks' revocatory actions.

PROMISSORY NOTES
Appellants also contend that summary judgment was improperly rendered on two promissory notes held by Central. Specifically, Simmons argues that Phillip Montgomery, a Central officer, orally agreed, prior to the execution of the note for $50,000 that Simmons could make a few $700 scheduled payments on the note, and then could pay the balance as Simmons desired. Simmons' claims are contradicted by express, typed-in provisions on the back of the note signed by Mr. Simmons, which provide for payments in accordance with the terms of the note, or if not paid off, the furnishing of full security.
*367 Parol evidence is not admissible to show a prior or contemporaneous agreement to vary the terms of a note in ordinary form. Security Bank v. Frost, 524 So.2d 937 (La.App. 2d Cir.1988); Cowley Corp. v. Shreveport Packing Co., Inc., of Kansas, 440 So.2d 1345 (La.App. 2d Cir. 1983), writ denied 444 So.2d 122. Although LSA-C.C. Art. 1848 provides that parol evidence may be allowed to prove circumstances such as a vice of consent or a subsequent oral modification of an agreement, Mr. Simmons' testimony in deposition reflects that Montgomery, while insisting that Simmons convert two overdue demand notes into the $50,000 installment note, merely stated he would try to get his supervisors to allow Simmons to only pay interest, as opposed to complying with the terms of the note. Simmons' testimony shows Montgomery told Simmons he was trying to help Simmons, but was being pressured by his supervisors to secure payment of the debt or full security. Accepting these statements of Simmons as true, his claim of vice of consent or misrepresentation is without merit and would be inadmissible at trial. There being no admissible evidence shown by Simmons to establish a genuine issue of material fact regarding the amounts due on the two notes, the trial court correctly granted summary judgment in favor of Central.

RECONVENTIONAL DEMAND
Finally, Simmons claims that the trial court erred in dismissing his reconventional demand against Central for damage to his financial reputation and his ability to do business. Based on our review and our conclusion that Central was entitled to summary judgment on the notes, we find that Simmons is not legally entitled to damages against Central merely because it exercised its legal right to collect the overdue, unpaid notes. The trial court properly granted summary judgment on the reconventional demand.

DECREE
For the reasons stated, we affirm the trial court judgments in all aspects. Costs are assessed to appellants.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, HIGHTOWER, VICTORY and STEWART, JJ.
Rehearing denied.
NOTES
[1] Because this case deals with many pleadings, documents, etc., the references in this opinion to "Simmons" do not necessarily mean both Eugene and Harriet Simmons, but one, the other, or both.