698 So.2d 413 (1997)
READING & BATES CONSTRUCTION COMPANY and Reading & Bates Horizontal Drilling, Ltd., PlaintiffsAppellants,
v.
BAKER ENERGY RESOURCES CORPORATION, DefendantAppellee.
No. 96-1276.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1997.
Rehearing Denied September 15, 1997.
*414 Richard Lee Seelman, New Orleans, Leonard Rose, Robert Tormohlen, Kansas City, MO, for Reading and Bates Const. Co., et al.
Dennis Joseph Vidrine, Lafayette, Richard A. Schwartz, Amite, for Baker Energy Resources Corp.
William E. Junell Jr., Houston, TX, Denis C. Swords, Lafayette, for Amerada Hess Corp.
William M. Coats, Glen Nordt, Houston, TX, for Highlands Insurance Company.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a garnishment proceeding. Plaintiffs-garnishors, Reading & Bates Construction Company and Reading & Bates Horizontal Drilling, Limited (Reading), appeal the trial court's denial of their rule to traverse answers to interrogatories filed by garnishee, Amerada Hess Corporation (Amerada). The trial court determined that Amerada answered Reading's interrogatories truthfully. The trial court also denied Reading's revocatory action against intervenors, LLR Holding Corporation (LLR) and Baker Energy Resources Corporation (Baker Energy), ruling that Reading failed to discharge its burden of proving, pursuant to La.Civ.Code art. 2036 et seq., that an April 22, 1992 security agreement between LLR and Baker Energy and a September 18, 1992 foreclosure sale by which LLR acquired all of the assets of Baker Energy caused or increased Baker Energy's insolvency.
For the following reasons, we affirm.

FACTUAL SUMMARY
The Louisiana Garnishment Proceeding and the Texas Litigation
Reading, as judgment creditor of Baker Energy, filed a garnishment petition in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana on June 15, 1995. Reading sought to garnish $250,000.00 which Reading alleged Baker Energy was entitled to receive from Amerada pursuant to a June 13, 1995 compromise and settlement of an Eightieth Judicial District Court, Harris County, Texas case. Reading alleged the Texas settlement was entered into by and between Highlands Insurance Company (Highlands), Baker Energy, and Amerada. Reading propounded garnishment interrogatories to two garnishees, Amerada and Highlands. Additionally, Reading caused a Writ of Fiera Facias to issue against Baker Energy, ordering the Sheriff of Lafayette Parish to seize and sell all of the property of Baker Energy.
The Texas litigation, a dispute over Baker Energy's non-completion of a pipeline construction project for Amerada, began in 1985. The settlement, which was announced by the parties' attorneys in open court during trial in Houston, Texas on June 13, 1995, obligated Amerada to pay Baker Energy $250,000.00 and Highlands $1,250,000.00, as a partial refund on amounts previously paid to Amerada by Highlands, the bonding company on the pipeline project.
On June 21, 1995, six days after Reading filed its garnishment petition in the Fifteenth Judicial District Court in Lafayette Parish, Baker Energy filed a motion in the Texas proceedings to substitute LLR for itself as the "real party in interest." Baker Energy attached to its motion several documents, including an April 22, 1992 security agreement executed between LLR, the secured party, and Baker Energy, which pledged all of its assets to secure the debt owed to LLR by Baker Energy's parent corporation, Baker Marine Corporation (Baker Marine). Baker Energy also attached to its motion proof that LLR had foreclosed on and purchased all of Baker Energy's assets at the September 18, 1992 foreclosure sale conducted in San Patricio County, Texas. Baker Energy claimed that, by this foreclosure sale, LLR acquired ownership of its cause of action against Amerada. Baker Energy's motion to substitute LLR also acknowledged the fact that Reading had filed the garnishment petition and interrogatories in Louisiana and represented that "[s]ince these funds are actually owned by LLR and not Baker *415 Energy, a substitution of the real party in interest will protect the true owner[`]s interest in the proceeds of the settlement."
On June 21, 1995, Texas State District Judge Scott Link of the Eightieth Judicial District Court signed an order substituting LLR as the party plaintiff and "real party in interest" in place of Baker Energy in the suit. The written settlement agreement, executed on June 27, 1995, obligated Amerada to pay $250,000.00 to LLR instead of Baker Energy. Amerada and LLR agreed to place the $250,000.00 in an interest-bearing escrow account under the control of Amerada's attorneys pending resolution of Reading's Louisiana garnishment action.
Meanwhile, in Reading's garnishment action, Amerada filed its answers to Reading's garnishment interrogatories on June 28, 1995. In its answers, Amerada represented that, after it agreed to settle with Baker Energy and Highlands on June 13, 1995, Baker Energy presented Amerada with certain documentary proof that LLR, not Baker Energy, was the owner of the cause of action against Amerada by virtue of LLR's foreclosure upon all of the assets of Baker Energy on September 18, 1992, which foreclosure was prompted by Baker Energy's default on the April 18, 1992 security agreement executed in favor of LLR. Amerada stated that after being presented with LLR's proof of ownership of the cause of action, it did nothing to oppose Baker Energy's motion to substitute LLR in place of Baker Energy. Amerada also represented that it had not paid any of the money it owed under the settlement to either LLR or Baker Energy.
On July 5, 1995, Reading filed a rule to traverse Amerada's garnishment interrogatory answers. Therein, Reading maintained that LLR is not entitled to the garnished funds primarily because: (1) LLR was not substituted for Baker Energy as plaintiff in the Texas litigation until after the service of the Louisiana garnishment petition and interrogatories; (2) Baker Energy actively prosecuted the Texas suit in its own name from 1985 through the filing of the garnishment petition; (3) Amerada was not even aware of LLR's existence until after the Texas settlement and service of the Louisiana garnishment petition and interrogatories; (4) the original settlement announced in open court in Houston on June 13, 1995 was between Baker Energy and Amerada; and (5) LLR had no involvement in the transaction underlying the Amerada-Baker Energy pipeline construction dispute and litigation. Reading alleged that the substitution of LLR for Baker Energy after Reading's service of the garnishment petition and interrogatories amounted to "a deliberate and intentional effort to avoid the present garnishment." In the alternative, Reading asserted that, if LLR obtained ownership of the Baker Energy cause of action pursuant to the September 18, 1992 foreclosure sale, that sale and the April 22, 1992 security agreement which LLR foreclosed upon were fraudulent transfers which either caused or increased the insolvency of Baker Energy. Reading pleaded in the alternative for the revocation of these transfers pursuant to La.Civ.Code art. 2036 et seq.
On July 14, 1995, Reading filed supplemental interrogatories to Amerada, which answered these supplemental questions on August 8, 1995. Amerada's supplemental answers were substantively similar to its original answers.
On October 4, 1995, Baker Energy, Baker Marine, and LLR filed in a single pleading an opposition to Reading's rule to traverse Amerada's garnishment interrogatory answers and an intervention in opposition to the garnishment and traversal of Amerada's interrogatory answers. Therein, these three parties maintained that the traversal of garnishment answers to interrogatories is limited to an inquiry into the truthfulness of the garnishee's answers and that the substantive question regarding ownership of the cause of action against Amerada is not properly within the scope of Reading's rule to traverse. Baker Energy, Baker Marine, and LLR prayed for the trial court to sustain their opposition to Reading's garnishment and find that Amerada is indebted to LLR, not Baker Energy, under the Texas settlement agreement.
The Baker Family and its Companies
The Baker family consists of Larry Baker, Sr., Virginia Baker (Larry, Sr.'s wife), and *416 their two sons, Larry Baker, Jr. and Russell Baker. The four members of the Baker family own one-hundred percent of the stock of Baker Marine, which was incorporated on February 19, 1971. Baker Marine's primary business is offshore oil and gas rig construction. Its directors are Larry Baker, Sr., Larry Baker, Jr., Virginia Baker, and Jerry Von Tunglen. Baker Marine's officers are Larry Baker, Jr., Virginia Baker, and Jerry Von Tunglen.
Baker Marine owns 100% of the stock of Baker Energy, which was incorporated on December 3, 1980. Baker Energy is in the horizontal or directional drilling business. Baker Energy's directors are Larry Baker, Jr., Russell Baker, and Jerry Von Tunglen. Its officers are Larry Baker, Jr., Jerry Von Tunglen, and Virginia Baker.
LLR was incorporated by the Baker family on January 31, 1992. LLR's shareholders and directors are Larry Baker, Jr., Larry Baker, Sr., and Russell Baker, who collectively own 100% of LLR stock. Its officers are Larry Baker, Jr., Russell Baker, and Virginia Baker.
LLR owns 100% of the stock of BERCO Services, Incorporated (BERCO), which was incorporated on September 18, 1992, the same date as the foreclosure sale by which LLR claims to have purchased Baker Energy's cause of action against Amerada, along with all of the assets of Baker Energy. After foreclosing on the assets of Baker Energy, LLR transferred the former assets of Baker Energy to BERCO, which, coincidentally, is also in the horizontal or directional drilling business.
LLR's Ownership Claim to Baker Energy's Cause of Action Against Amerada and The Reading-Baker Energy Canadian Patent Infringement Litigation
On September 1, 1983, Reading filed a patent infringement suit against Baker Energy and Baker Marine in the Federal Court of Canada, Trial Division. Reading alleged therein that the defendants had wrongfully infringed upon a Reading-owned patented technology in the process of installing a pipeline under the St. Lawrence River in 1983.
For the first two decades of its existence, Baker Marine's primary financial lender was Seattle First National Bank (SeaFirst) of Seattle, Washington. On March 31, 1984, Baker Marine executed a loan agreement, a security agreement, and two revolving credit and term promissory notes in favor of SeaFirst for $12,750,000.00 and $2,500,000.00, respectively. Among other listed "Events of Default," article 6.01(g) of the loan agreement provided that SeaFirst could hold Baker Marine in default if a judgment of greater than $500,000.00 were entered against Baker Marine or its subsidiaries and the judgment impaired or defeated SeaFirst's lien on any of the collateral or any of Baker Marine's rights in the collateral. To constitute an event of default, such a judgment would have to remain unsatisfied and in effect for ten consecutive days.
On March 20, 1986, the Canadian Federal Court determined that Baker Energy had infringed on Reading's patent and referred the case to a referee for a recommendation regarding damages.
On October 14, 1991, SeaFirst filed suit against Baker Marine for default on the $12,750,000.00 note, loan agreement, and security agreement. On January 17, 1992, this litigation was settled. The settlement documents indicate that, at the time of settlement, the note had a $12,434,451.72 principal balance and had accrued interest totaling $6,767,142.88, for a total indebtedness of $19,201,594.60. The second $2,500,000.00 note was not in default. SeaFirst accepted $600,000.00 cash from the personal assets of Larry Baker, Sr., Larry Baker, Jr., and Russell Baker on behalf of LLR. In exchange for the $600,000.00, SeaFirst assigned all of its rights against Baker Marine in the first note, the loan agreement and the security agreement to LLR. Additionally, LLR assumed SeaFirst's position with regard to the transaction "in every respect," and the settlement documents incorporated by reference the terms of the original note, loan agreement, and security agreement.
On January 27, 1992, in the Canadian patent infringement case, the referee issued a report in which he recommended that Baker Energy be held liable to Reading for all of *417 the profits Baker Energy earned on the St. Lawrence River pipeline project, $2,934,205.000 in Canadian dollars, plus prejudgment interest from the date of judicial demand and postjudgment interest from the date of judgment until paid.
On April 22, 1992, LLR and Baker Energy executed a security agreement. Therein, the parties represented that the original 1984 SeaFirst-Baker Marine loan agreement and promissory note was secured in part by Baker Energy's pledge of 8,000 shares of its stock. After the January 17, 1992 settlement, Baker Marine continued to be in default on the note which LLR purchased from SeaFirst as part of the settlement. In consideration for LLR's forbearance from foreclosure on the 8,000 shares of Baker Energy stock and because LLR considered itself to be undersecured on the obligation of Baker Marine, Baker Energy pledged all of its assets to LLR as additional security for Baker Marine's debt to LLR. The collateral pledged included Baker Energy's "accounts, money, proceeds, deposit accounts, inventory, goods, documents, chattel paper, general intangibles, instruments" and Baker Energy's "equipment and personal property" as set forth in an attached descriptive list. The required public records filings were made in accordance with Chapter Nine of the Texas Commercial Code.
On May 14, 1992, Baker Marine executed a loan restructuring agreement, a new security agreement, and a renewal promissory note in the amount of $19,201,594.60 in favor of LLR. Like the original SeaFirst-Baker Marine loan package, these agreements provided for default upon the entry of a judgment in excess of $500,000.00 against Baker Marine or its subsidiaries.
On July 6, 1992, the Federal Court of Canada rendered judgment in favor of Reading and against Baker Energy in the patent infringement case. The court accepted the aforementioned referee's recommendation in full. Therefore, the judgment against Baker Energy was rendered for $2,934,205.00 in Canadian dollars plus the applicable interest. Baker Energy suspensively appealed the judgment to the Federal Court of Appeal of Canada.
On August 4, 1992, Larry Baker, Jr., in his capacity as president of LLR, sent letters captioned "NOTICE OF DEFAULT" to Bill Greer, president of Baker Energy, and Jerry Von Tunglen, vice-president of Baker Marine, declaring in default the May 14, 1992 loan restructuring agreement and renewal promissory note. The reason given for the declaration of default was the entry of the Canadian judgment in favor of Reading and against Baker Energy. Also, LLR explained that it intended to foreclose on all of Baker Energy's assets which were pledged to LLR pursuant to the April 22, 1992 security agreement.
On August 31, 1992, LLR sent a letter to Mr. Greer at Baker Energy and Mr. Von Tunglen at Baker Marine informing them that Baker Energy's assets would be sold at a public sale on September 18, 1992 at the San Patricio County, Texas Courthouse. Public notices were then placed in the Houston Chronicle and Houston Post newspapers.
The assets of Baker Energy were sold to LLR for $1,250,000.00 at the September 18, 1992 public sale. LLR applied the purchase price to the balance owed on Baker Marine's note. Thereafter, LLR transferred the purchased assets to BERCO, its wholly-owned subsidiary, which was incorporated on September 18, 1992. BERCO began operations in the horizontal drilling business with offices at the former business location of Baker Energy.
Reading petitioned the Orleans Parish, Louisiana Civil District Court to make executory its Canadian judgment rendered against Baker Energy. On December 1, 1992, the Orleans Parish Civil District Court rendered a judgment making the Canadian judgment executory and ordering it executed. A certified copy of this judgment was filed in the Fifteenth Judicial District Court in Lafayette Parish on March 16, 1993. This judgment forms the basis of Reading's garnishment petition. On October 18, 1994, the Canadian Federal Court of Appeal dismissed Baker Energy's appeal. On June 1, 1995, the Supreme Court of Canada dismissed Baker Energy's application for leave to appeal from the Court of Appeal's judgment. The Canadian *418 judgment became final and non-appealable.
Trial Court Proceedings in Reading's Garnishment Action
On January 3, 1996, the trial court conducted a hearing on Reading's traversal of Amerada's garnishment interrogatory answers and the issues raised in the intervention of LLR, Baker Energy, and Baker Marine. The first stage of the trial dealt with the issue of whether Amerada's answers were truthful. William E. Junell, Jr. testified that he is an attorney in Houston and that he represented Amerada in the Texas litigation against Baker Energy and Highlands. Under examination by Reading's attorney, he stated that, on June 13, 1995, Amerada orally agreed to pay Baker Energy $250,000.00 to settle the litigation. At that time, he was unaware that LLR had any ownership claim or interest in the settlement proceeds. Mr. Junell explained that the first draft of the written settlement, which he drafted and sent to Baker Energy's counsel, Richard Schwartz, on June 16, 1995, provided that Baker Energy would receive the $250,000.00. He said that LLR was not included as a party to this first draft. Mr. Junell then testified that, on June 19, 1995, he received the first draft back from Mr. Schwartz with suggested revisions. In a cover letter attached to the revised draft, Schwartz suggested that Amerada prepare separate checks to Highlands and Baker Energy so as not to delay payments to Highlands during the pendency of the garnishment dispute between Reading and Baker Energy. The letter, which was entered into evidence, contains a handwritten notation, "Ed [Mr. Junell], what do you think about asking Judge Link to substitute LLR as the real party in interest?"
Under examination by Mr. Schwartz, Mr. Junell detailed the documentary evidence presented to him by Mr. Schwartz during mid-June 1995 in an effort to satisfy his concern regarding LLR's interest in the settlement proceeds. These documents primarily included the initial SeaFirst-Baker Marine loan agreements, the LLR-SeaFirst-Baker Marine settlement, the LLR-Baker Energy security agreement, proof of LLR's purchase of all of Baker Energy's assets at the foreclosure sale, and the affidavit of Larry Baker, Jr. Mr. Junell stated that, after reviewing these documents, he did nothing on behalf of Amerada to oppose the substitution of LLR for Baker Energy. Mr. Junell stated that Baker Energy presented these documents to Texas District Court Judge Scott Link in conjunction with Baker Energy's motion to substitute LLR as the real party in interest. Mr. Junell said that Judge Link signed the order substituting LLR for Baker Energy after being presented with this documentary proof of LLR's ownership of the assets of Baker Energy.
Mr. Junell explained that the final written settlement document and the judgment dismissing the suit required Amerada to pay the $250,000.00 to LLR in place of Baker Energy. He said that he believes he answered all of Reading's garnishment interrogatories on behalf of Amerada truthfully at the time and that all the answers remain truthful.
At the close of Mr. Junell's testimony, on motion of LLR and Baker Energy, the trial court ruled that Reading, as proponent of the rule to traverse, had the burden of proving that Amerada's answers were inaccurate or not true. The trial court concluded that Reading failed to meet its burden of proof. The trial court also held that Reading failed to prove that LLR did not own the cause of action against Amerada at the time Reading served the garnishment petition and interrogatories on Amerada.
The trial proceeded to the second stage in which Reading sought to prove that LLR acquired ownership of the cause of action through fraudulent transfers. Specifically, Reading alleged that the April 22, 1992 LLR-Baker Energy security agreement should be annulled because it caused or increased Baker Energy's insolvency. Reading asserted that its claim against Baker Energy arose at the time of the patent infringement or, at the latest, on the date of the referee's recommendation. Reading maintained that Baker Energy's pledge of all of its assets to LLR when it was faced with a multi-million dollar judgment resulted in at least an increase in Baker Energy's insolvency.
*419 LLR countered that the referee's report was not a final definitive judgment but only a recommendation to a judge much as a United States Magistrate recommends case dispositions to a United States District Judge. LLR argued that, at the time of the LLR-Baker Energy security agreement, Baker Energy was solvent and that the security agreement did nothing to make it insolvent or increase its insolvency.
Baker Energy's balance sheets for April 30, 1992 and September 30, 1992 were entered into evidence. The April balance sheet reflects assets of $1,403,744.77, liabilities of $263,661.91, and shareholders' equity of $1,140,082.86. The September balance sheet reflects assets of $1,508,147.82, liabilities of $215,903.61, and shareholders' equity of $1,292,244.21. Therefore, the accounting records of Baker Energy showed that, between the date of the security agreement and the foreclosure sale, Baker Energy became more solvent. Baker Energy maintained that it did not have to show the referee's recommendation on its balance sheet as a liability or contingent liability in April 1992 because the recommendation had not been reduced to a final judgment. It asserted further that the judgment did not have to be reflected on its September 1992 balance sheet because it was a foreign judgment that had been suspensively appealed.
Larry Baker, Jr., testified on behalf of LLR and Baker Energy. He stated that, since the entry of Reading's Canadian judgment and the foreclosure sale of Baker Energy's assets to LLR, Baker Energy no longer performs horizontal drilling work. He said that BERCO has, for the most part, the same employees as Baker Energy had and occupies the same office space that Baker Energy used to occupy. BERCO also has the same phone number, fax number, and a similar corporate logo as did Baker Energy. He stated that BERCO purchased its own insurance and opened its own bank account.
He said that, before April 22, 1992, Baker Energy's stock, not its assets, was pledged to secure the debt of Baker Marine to SeaFirst and then LLR. According to Baker, the security agreement was executed to provide LLR with more security. He conceded that this was the first time that all of Baker Energy's assets were pledged in one transaction to secure the debt of another company. However, Baker said that, in Baker Marine's course of dealing with SeaFirst, Baker Marine normally caused the assets of its subsidiaries to be pledged to secure Baker Marine's debt.
Baker explained that, on the date of the LLR-Baker Energy security agreement, Baker Energy had between $180,000.00 and $300,000.00 on deposit with the Federal Court of Canada. He stated that Reading alleged in its suit that Baker Energy had saved $180,000.00 by using Reading's patent-protected technology, so Baker Energy deposited this amount or more with the court to cover what it thought was its potential exposure.
Baker also said that, at the foreclosure sale, no cash was actually paid to Baker Energy upon the sale of its assets. According to Baker, LLR applied the $1,250,000.00 purchase price to the balance of the Baker Marine note and LLR had to pay $180,000.00 in taxes as a result of the transaction.
At the close of Baker's testimony, Baker Marine moved for judgment as a matter of law because Reading failed to carry its burden of proving that the complained of transfers caused or increased Baker Energy's insolvency and should be judicially revoked. After entertaining lengthy oral argument from both sides, the trial court granted judgment in favor of Baker Marine as a matter of law. The trial court determined that Reading failed to prove the complained of transactions caused or increased Baker Marine's insolvency.
The trial court signed judgment in this matter on February 1, 1996. It ruled that Reading failed to meet its burden of proof and that Reading was not entitled to annul and void the April 22, 1992 security agreement or the September 18, 1992 foreclosure sale, which it determined were not fraudulent or simulated transactions. The trial court also determined that LLR was not an "insider" of Baker Energy. Finally, the trial court ruled that Amerada's garnishment interrogatory answers were truthful.
*420 Reading filed a motion to reconsider or, in the alternative, for new trial. The trial court conducted a hearing on this matter via telephone conference on March 1, 1996. Reading asserted that, in the second phase of trial, the trial court misapplied the burden of proof applicable to Reading's revocatory action by requiring Reading to prove that the challenged transactions caused or increased Baker Energy's insolvency. Reading argued that, pursuant to Central Bank v. Simmons, 595 So.2d 363 (La.App. 2 Cir.1992), once it had proved the amount of its claim against Baker Energy, the burden shifted to the debtor, Baker Energy, to prove that it had sufficient assets at the time of the challenged transactions to pay its obligations.
In opposition to Reading's motion, LLR and Baker Energy countered that the Central Bank case applied the burden of proof applicable to pre-1984 revocatory actions. They asserted that 1984 legislative revision to the Civil Code articles on the Law of Obligations changed the burden of proof to require that the party filing the revocatory action prove that the challenged transactions caused or increased the debtor's insolvency. LLR and Baker Energy reasserted that Reading failed to prove (1) the amount of its claim since it only had a referee's recommendation at the time of the April 22, 1992 security agreement, and (2) the complained of transactions caused or increased Baker Energy's insolvency given that the Baker Energy balance sheets, the accuracy of which were not challenged by Reading, showed that Baker Energy's solvency actually increased from April 1992 to September 1992.
The trial court denied Reading's motion for reconsideration, or alternatively, for new trial. Thereafter, Reading requested that the trial court provide written reasons for judgment. The trial court did so on April 2, 1996. Therein, the trial court reasoned that Reading, as garnishor, had the burden of proving that Amerada's answers to its interrogatories were not truthful. The trial court specifically found Mr. Junell's testimony "honest and persuasive" in concluding that Reading failed to prove that Amerada's answers were inaccurate. It also determined that Reading failed to prove that LLR did not properly acquire Baker Energy's cause of action against Amerada. The trial court concluded that Reading's argument, that the foreclosure sale did not transfer title to LLR because it did not comply with Texas Property Code § 12.014, which requires a writing to transfer a cause of action, was misplaced because that law applies to voluntary transfers or assignments and a foreclosure sale is an involuntary transfer.
On the revocatory action issue, the trial court determined that Reading failed to prove the amount of its claim against Baker Energy on April 22, 1992. The trial court reasoned that it was not persuaded that a foreign recommendation that was later accepted and rendered as a foreign judgment, which was then suspensively appealed, has a value in United States dollars equivalent to the amount of the judgment in Canadian dollars or an amount reduced in accordance with the monetary exchange rate. The trial court also concluded that Reading did not present sufficient proof that the challenged transactions caused or increased Baker Energy's insolvency. The trial court specifically held that, pursuant to La.Civ.Code art. 2043[1], the party seeking the revocation of a transfer of assets and annulment of the transfer has the burden of proving that the transaction caused or increased the obligor's insolvency. The trial court did not apply the shifting burden of proof enunciated in Central Bank because it determined that the second circuit cited pre-1984 law in that case. The trial court also found that the security interest granted by Baker Energy to LLR was a contract in Baker Energy's regular course of business.
On appeal, Reading maintains the trial court erred in finding that LLR legally and properly purchased Baker Energy's cause of action against Amerada at the September 18, 1992 foreclosure sale. Reading also asserts that, if LLR's purchase was legal and proper, then the trial court erred in finding that the April 22, 1992 security agreement and September 18, 1992 foreclosure sale were not *421 fraudulent transfers entitling Reading to annul these transactions.

LAW
In its first assignment of error, Reading contends that LLR failed to prove that it owned the funds seized by Reading's garnishment. Reading asserts that, as intervenor, LLR had the burden of proving its ownership interest in and entitlement to the seized funds. Reading maintains that the trial court erred procedurally by requiring Reading to prove that LLR did not own the funds and, on the merits, by finding that Reading failed to carry this burden.
In its rule to traverse the garnishment interrogatory answers of Amerada, Reading initially had the burden of proving that Amerada's answers were untruthful or inaccurate. La.Code Civ.P. art. 2414; Home Fin. Serv. v. Treadaway, 185 So. 700 (La. App.Orl.1939). However, when LLR intervened in the garnishment proceeding to assert its ownership interest in the funds sought to be garnished by Reading, it assumed the burden of proving its alleged interest in such funds. La.Code Civ.P. arts. 1092, 1094; Modisette & Adams v. Lorenze, 112 So. 397, 163 La. 505 (1927). Our review of the record does not reveal that the trial court applied the wrong burden of proof in this matter. The trial court, in written reasons, made a two-fold determination concerning the first phase of the trial. It concluded that Reading failed to prove that Amerada's answers were untruthful and, after "an independent review of the evidence," that Baker Energy's cause of action against Amerada was properly transferred pursuant to the foreclosure sale. Upon review of this second decision in light of the documentary and testimonial evidence presented, we conclude that the trial court's determination is not clearly wrong. The record amply supports the conclusion that LLR legally and properly acquired ownership of all of Baker Energy's assets, which necessarily included its cause of action against Amerada, at the September 18, 1992 foreclosure sale. The foreclosure sale was conducted in accordance with the provisions of the Texas Commercial Code insofar as notice and filing requirements are concerned.
Reading's arguments that the foreclosure sale is invalid because it did not comply with Texas Property Code § 12.014[2] and, alternatively, that the transfer was not perfected because the purchaser, LLR, did nothing to cause Baker Energy to lose control of the suit against Amerada, are without merit. The trial court correctly determined that Texas Property Code § 12.014 applies only to voluntary transfers or assignments and not to involuntary transfers or foreclosure sales. Additionally, the cases cited by Reading [Texarkana Memorial Hosp. v. Murdock, 903 S.W.2d 868 (Tex.App.Texarkana 1995); Carr & Howard Constr. Co. v. Panhandle State Bank, 347 S.W.2d 793 (Tex.Civ.App. 1961); Wolters Village Management Co. v. Merchants & Planters Nat'l Bank, 223 F.2d 793 (5th Cir.1955); and In re Ashford, 73 B.R. 37 (N.D.Tex.1987) ], for the rule that the assignee must do something to take control of the suit or actually or constructively appropriate the cause of action are not controlling. These cases concern voluntary assignment or transfer of causes of action and do not involve the involuntary sale of a cause of action as part of all of the assets of a corporation being foreclosed upon.
In summation, we conclude that LLR provided sufficient proof of its ownership of Baker Energy's cause of action against Amerada. The cause of action was legally acquired pursuant to a properly conducted foreclosure under the Texas Commercial Code. The fact that LLR did nothing to take control of the suit from Baker Energy until after an oral agreement of settlement and the service of Reading's garnishment interrogatories upon Amerada is of no moment to the determination of whether LLR proved that it was the owner of the cause of action and the real party in interest.
In its second assignment of error, Reading argues that the trial court erred in concluding *422 that it failed to carry its burden of proving that the April 22, 1992 Baker Energy-LLR security agreement and the September 18, 1992 foreclosure sale caused or increased Baker Energy's insolvency and should be annulled. Additionally, Reading maintains that the trial court erred in requiring Reading to prove both the amount of its claim at the time of the transfers and that the transfers caused or increased Baker Energy's insolvency. Reading contends that, once it proved the amount of its claim, the burden shifted to Baker Energy to prove that the transfers did not cause or increase its insolvency, citing Central Bank. We shall first address the burden of proof issue.
"An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." La.Civ. Code art. 2036. As correctly stated in the Central Bank case, after the 1984 revisions to the revocatory action articles, the obligee need not prove actual fraud in the challenged transaction. The existence of the debt and insolvency of the debtor are the two prerequisites to revocation of the transaction. "An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets." La.Civ.Code. art. 2037.
The trial court declined to follow the second circuit's application of the shifting burden of proof employed in Central Bank because the trial court found that the burden of proof was changed in the 1984 legislative revisions. Specifically, the trial court relied on La.Civ.Code art. 2043, which provides, "[i]f an obligee establishes his right to annul his obligor's act, or the result of his obligor's failure to act, that act or result shall be annulled only to the extent that it affects the obligee's right." The trial court determined that this article is written in language which requires the obligee to establish his right to annul, meaning that the obligor must prove both elements of the revocatory action, existence of the debt and insolvency of the obligor, without having the burden of proof shift upon the obligee's proof of the amount of the its claim. The trial court, however, determined that the burden of proof in this case is immaterial because Reading did not prove the threshold requirement of the amount of Baker Energy's debt on the date of the challenged transactions.
We conclude that the trial court, as a matter of law, correctly declined to apply the shifting burden of proof rule enunciated in Central Bank. In that case, the second circuit recognized the fact that the revocatory action articles were revised in 1984 as part of the overall revision of the Law of Obligations. Central Bank, 595 So.2d 363. Additionally, the court, citing Morgan v. Gates, 396 So.2d 1386 (La.App. 2 Cir.1981) and Holland v. Gross, 195 So. 828 (La.App. 2 Cir.1940), stated:
Once a creditor alleging insolvency of its debtor shows the amount of his debts, it is then incumbent upon the debtor to show that he has retained assets of an equal or greater value.
Central Bank, 595 So.2d at 365.
Our examination of the two cases cited in Central Bank by the second circuit, Morgan and Holland, reveals that Civil Code article 1985 (1870) is the source of this rule. That article provided, in pertinent part:
By being in insolvent circumstances is meant, that the whole property and credits are not equal in amount at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property of an equal or lesser value. [Emphasis added.]
By effect of the 1984 revision to the Civil Code articles on the revocatory action, the second sentence of former Article 1985 (1870) was not retained and incorporated into the revised articles. Therefore, we conclude that this rule of evidentiary persuasion did not survive the 1984 revision and is not thereafter applicable in revocatory actions.
Generally, absent positive law to the contrary, a party that brings forth a cause of action has the burden of proving every element of its cause of action in order to avail itself of the judicial relief requested. The obligee, Reading in the present case, has the burden of proving the debt of the obligee and *423 that the challenged transaction caused or increased the insolvency of the obligor.
We conclude the trial court did not err in determining that Reading failed to prove the amount of its claim as of April 22, 1992. A debt need not be liquidated to judgment to be considered an anterior debt. La. Civ.Code art. 2036, comment (f), citing Holland, 195 So. 828 and Ventrilla v. Tortorice, 160 La. 516, 107 So. 390 (1926). On April 22, 1992, Reading had a recommendation of a referee that Baker Energy be held liable to Reading for $2,934,205.00 in Canadian dollars. In its Canadian suit, Reading itself alleged that the difference in the profit Baker Energy made by using the patented technology and the profit Baker Energy would have made had it employed standard technology, the usual measure of quantum in a patent infringement case, was $180,000.00. The referee's recommendation was not reduced to judgment until after the security agreement was signed. Even then, Baker Energy suspensively appealed the Canadian judgment, and it did not become final until 1995. The judgment was recognized in Louisiana on December 1, 1992. It was subject to suspension pending appeal in Canada. Reading asserted no alternative discounted value for the judgment other than the $2,934,205.00 in Canadian dollars adjusted for the United States-Canadian exchange rate of 0.8439 on April 22, 1992. We agree with the trial court's conclusion that Baker Energy's debt to Reading was still undetermined at the time of the LLR-Baker Energy security agreement. The trial court's rejection of the full valuation of Reading's claim is not erroneous in light of the fact that no alternative discounted valuation was presented.
Additionally, we conclude that Reading also failed to carry its burden of proving that the two transactions caused or increased Baker Energy's insolvency. The only evidence of Baker Energy's financial status presented into evidence were the balance sheets of April 30, 1992 and September 30, 1992. The accuracy of these financial records were not challenged by Reading, except insofar as it asserted that the Canadian judgment should have been reflected thereon as a liability or a contingent liability. Under these circumstances, Reading failed to prove that the challenged transactions caused or increased Baker Energy's insolvency.
Because we find that Reading did not carry its burden of proof necessary to annul the challenged transactions, we need not address its final argument that the trial court erred in determining that the April 22, 1992 security agreement was a transaction in Baker Energy's regular course of business. La.Civ. Code art. 2040, which provides "[a]n obligee may not annul a contract made by the obligor in the regular course of his business," applies only to prevent obligees from annulling transactions made by obligors in the regular course of business. The article is protective in nature and does not grant to obligees the right to annul transactions which are made outside the regular course of business.

DECREE
For these reasons, we affirm the trial court's judgment rendered in favor of defendant-garnishee, Amerada Hess Corporation and intervenors, Baker Energy Resources Corporation, LLR Corporation, and Baker Marine Company, and against plaintiffs-garnishees, Reading & Bates Construction Company and Reading & Bates Horizontal Drilling, Limited. Costs of this appeal are assessed to Reading & Bates Construction Company and Reading & Bates Horizontal Drilling, Limited.
AFFIRMED.
NOTES
[1] If an obligee establishes his right to annul his obligor's act, or the result of his obligor's failure to act, that act or result shall be annulled only to the extent that it affects the obligee's right.
[2] Paragraph (a) of § 12.014 provides "[a] judgment or part of a judgment of a court of record or an interest in a cause of action on which suit has been filed may be sold, regardless of whether the judgment or cause of action is assignable in law or equity, if the transfer is in writing."