It PATRICIA RIVET MURRAY, Judge.
Defendant, Hughes J. de la Vergne, II, as trustee for the Hughes J. de la Vergne, III, Trust [hereinafter “the trust”] appeals the granting of summary judgment in favor of plaintiff, Louis de la Vergne. For the reasons stated herein, we reverse and remand. ■
FACTS AND PROCEEDING BELOW
On December 26, 1996, Louis de la Vergne [“Louis”] filed this revocatory action against his brother, Charles de la Vergne, Jr. [“Charles”] in his individual capacity, and against both Charles and Hugues de la Vergne as trustees of the trust. Louis claimed that, as a creditor of Charles, he (Louis) had the right to revoke the transfer of certain stock from Charles to the trust for allegedly no consideration because the transfer caused or increased Charles’ insolvency.
*591 The stock in question is a single share of Mentab, Inc., a closely-held corporation. Charles became owner of the stock on August 28, 1987. On September 2, 1987, Charles filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the U.S.Code. During the pendency of the bankruptcy | ¡,;proceeding, the Mentab stock was held in pledge by the Whitney National Bank [“the Whitney”] as security for a debt Charles owed to the bank. In December, 1995, the Whitney moved that the bankruptcy court abandon the pledged share of Mentab stock from Charles’ bankruptcy estate for the reason that the stock was overly encumbered. The bankruptcy court granted the motion and entered an order abandoning the stock. The Whitney then released the pledge on the stock and returned it to Charles in exchange for a payment of $8,000, which was apparently paid by the trust. The ownership of the stock was then transferred by Charles to the trust. At the time the instant suit was filed in 1996, the bankruptcy proceeding was still pending in federal court.
In his petition, the plaintiff, Louis, alleged that he possessed an unexecuted 1986 judgment of the civil district court against his brother, Charles, which, after accounting for interest and various unnamed credits in Charles’ favor, had a principal balance of $272, 547.97 at the time of filing this revocatory action. Louis also alleged that the bankruptcy court had declared his judgment against Charles to be non-dischargeable in 1994. As a judgment creditor of Charles, Louis claimed he had the right under Louisiana Civil Code article 2036 to revoke the transfer of the Mentab stock to the trust on the basis that the transaction had caused or increased Charles’ insolvency.
Louis moved for summary judgment. After conducting a hearing on December 12, 2003, the trial court granted Louis’ motion on January 6, 2004. The judgment ordered that the transfer of the stock to the trust be revoked and further [.-¡ordered that the rights of Louis to the stock be declared superior to those of any other creditor of Charles, subject to a right of reimbursement in favor of the trust for the $8,000 it paid to the Whitney to obtain the release of the pledge.
The trust appeals suspensively, arguing that the trial court erred by granting summary judgment because genuine issues of material fact exist.
DISCUSSION OF FACTS AND LAW
Summary judgments are reviewed de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La.App. 4 Cir.1/10/01), 778 So.2d 668, 670. According to this standard, a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Id., p. 3, 778 So.2d at 670; La. C.C.P. art. 966(B).
The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. Allen v. Integrated Health Services, Inc., 32,196, p. 3 (La.App. 2 Cir. 1999), 743 So.2d 804, 806. A material fact exists if there is a dispute of fact whose existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery, i.e., one that would matter on trial of the merits. Schmidt v. Chevez, supra, p. 3, 778 So.2d at 670 (citing Moyles v. Cruz, 96-0307 (La.App. 4 Cir. 10/16/96), 682 So.2d 326). An adverse party to a supported motion for summary | ¿judgment may not rest on the mere allegations or denials of his *592 pleadings, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there exists a genuine issue of material fact for trial. Coates v. Anco Insulations, Inc., 2000-1331, p. 5 (La.App. 4 Cir. 3/21/01), 786 So.2d 749, 753. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Barbarin v. Dudley, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660 (citing Azreme, Corp. v. Esquire Title Corp., 98-1179 (La.App. 5 Cir. 3/30/99), 731 So.2d 422). Only when reasonable minds must inevitably conclude that the mover is entitled to summary judgment as a matter of law on the facts before the court is a summary judgment awarded. Allen v. Integrated Health Services, Inc., supra, p. 3, 743 So.2d at 806.
In a revocatory action such as the instant case, the plaintiffs burden of proof is set forth by Louisiana Civil Code article 2036, which provides, in pertinent part:
An obligee has the right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obli-gor’s insolvency.
Therefore, to prevail on his motion for summary judgment, Louis had to show that Charles was his obligor, that Charles was insolvent, and that this insolvency either had been caused or had been increased by the transfer of the Mentab stock to the trust. At the hearing on the motion and again on appeal, the defendants contend that Louis failed to submit facts sufficient to meet this burden of proof. After reviewing the record, we agree.
|Jn support of his motion, Louis submitted: the order of the bankruptcy court declaring the Mentab stock abandoned as being encumbered beyond its value; the deposition of a representative of the Whitney; two cashier’s checks equaling $8,000 containing notations that were obtained by Charles Frick de la Yergne (the son of Charles, the defendant), which checks were paid to the W/hitney and its counsel, respectively; and finally, requests for admission/interrogatories propounded by plaintiff to Charles and Charles’ answers thereto. In opposition to the motion, the defendants submitted the affidavits of three individuals: Charles, Charles’ aforementioned son, and Hugues de la Vergne.
With regard to the first element of Louis’s cause of action, Louis submitted no proof to support the assertion in his petition that Charles was his obligor; neither the alleged judgment, nor any facts supporting the amount or nature of the credits was submitted with the motion. For defendants’ part, although they admitted in their answers to discovery that such a judgment existed, they nevertheless asserted that the credits owed by Louis to Charles exceeded the amount of the judgment. Neither the plaintiff nor the defendants substantiated their assertions on this issue.
Regarding the second element, Charles’ insolvency, Louis relied upon the fact that Charles had filed for bankruptcy and on Charles’ response to interrogatories seeking a declaration of his assets and liabilities. In his response, Charles listed assets including: clothing, golf clubs, an automobile, $500 in household goods, an undivided one-half interest in a portrait (interest valued at $50,000), and his interest as beneficiary of the de la Vergne/Schmidt Trust (listed as not susceptible of valuation). In his affidavit as well as in his responses to discovery, Charles denied that he was insolvent.
IfiAs Louis contends that Charles was insolvent when he transferred the Mentab *593 stock to the trust, the final element of plaintiffs cause of action is to establish that the transfer increased Charles’ insolvency. In support of this element, Louis merely asserts that the one share of stock, which he claims must have some value, was transferred to the trust for no consideration; therefore, he argues that the transaction necessarily increased Charles’ insolvency. The defendants also refute this contention. Supported by their affidavits, they assert that the consideration for the transfer was the trust’s payment of $8,000 to the Whitney to release the Men-tab stock from the pledge. Hugues de la Vergne specifically averred in his capacity as co-trustee, that the trust paid the $8,000 to acquire the stock. Charles averred that the transaction did not effect his personal financial condition because the balance due on the pledge to the Whitney was more than the value of the stock.
Finally, in addition to disputing that the plaintiff has established the elements of a prima facie case for revocation without the existence of a genuine issue of material fact, the defendants oppose the summary judgment on the ground that the plaintiff, Louis, as a beneficiary of the trust, actually voted for the transfer of the Mentab stock from Charles’ name to the books of the trust. Louis admits he voted for a group of transactions that included the transfer of the Mentab stock. According to the defendants, this fact raises the issue of estoppel, which should have precluded summary judgment.
ANALYSIS
In view of the record, we are compelled to find that the plaintiff failed to support his motion for summary judgment with facts sufficient to establish the elements of a revocatory action and the absence of a genuine issue of material fact. |7The defendants dispute that Charles is an obligor of Louis’s. Louis failed to submit either the judgment or any evidence of credits to the judgment. While this court could take judicial notice of the existence of the judgment assuming it is a public record, there would still be a genuine issue of fact as to whether Charles is indebted to Louis considering that Charles and Louis apparently dispute the amount of credits to the judgment.
More importantly, Louis failed to submit sufficient evidence to show either that Charles was insolvent or that the transfer of the single share of Mentab stock to the trust increased his insolvency. The fact that Charles filed for bankruptcy in 1987, eight years before the transfer of the stock, does not, in and of itself, establish that he was insolvent at the time of the transfer. Nor does Charles’ own list of his assets, in the absence of any information as to his liabilities, establish his insolvency, especially considering his sworn affidavit denying that he was insolvent. Louisiana Civil Code article 2037 clearly states: “An obligor is insolvent when the total of his liabilities exceed the total of his fairly appraised non-exempt assets.”
In Reading & Bates v. Baker Entergy Resources, 96-1276 (La.App. 3 Cir. 5/21/97), 698 So.2d 413, the Third Circuit specifically rejected the argument that a creditor alleging the insolvency of his debt- or need only show the amount of the debts, at which point the burden of proof switches to the debtor to show he has assets of an equal or greater value. The Reading & Bates court confirmed that in a revocatory action under Civil Code article 2036, the obligee must prove both the amount of the obligor’s debt and that the challenged transaction caused or increased the insolvency of the obligor. Id. at pp. 19-21, 698 So.2d at 422-423.
*594 | ^Besides failing to show that Charles was insolvent at the time of the transaction, Louis also failed to produce any evidence that the stock transfer negatively affected Charles’ financial condition. Specifically, there was absolutely no evidence as to the value of the stock. Although the transaction plaintiff seeks to annul is the transfer of the stock from Charles to the trust, the defendants contend that in reality the transaction involved three parties: Charles agreed to transfer the stock in exchange for the trust’s agreement to pay $8,000 to the Whitney so that the Whitney would release the stock from the pledge.[1]
In the instant case, there clearly are disputed issues of fact with regard to the amount of Charles’ debt to Louis, whether Charles was insolvent at the time of the stock transfer, and assuming Charles was insolvent, whether the transfer worsened that financial condition. Because such disputed issues exist, we find that the trial court erred by granting the summary judgment in favor of the plaintiff.
CONCLUSION
Accordingly, the judgment of the trial court is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. This raises the question, which we decline to address herein but which the parties may consider after remand, of whether the Whitney is an indispensable party to the instant action by virtue of Louisiana Civil Code arti-dle 2042, which provides, in pertinent part: "In an action to annul either his obligor’s act, or the result of his obligor’s failure to act, the obligee must join the obligor and the third persons involved in that act or failure to act.”